UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| VICTOR SALAZAR,<br><br>                    Plaintiff,<br><br>     v.<br><br>RANDY BLADES; DAVINA LAU;<br>DEPUTY WARDEN<br>CHRISTIANSEN; IDOC<br>INVESTIGATOR BONGIOVI; IDOC<br>INVESTIGATOR MAES; and KEVIN<br>KEMPF,<br><br>                    Defendants. | Case No. 1:16-cv-00041-REB<br><br>**MEMORANDUM DECISION AND<br>ORDER** |

Plaintiff is a prisoner in the custody of the Idaho Department of Correction

("IDOC") and is proceeding pro se in this civil rights matter. Currently pending before

the Court are the following motions: (1) Defendants' Motion for Summary Judgment

(Dkt. 16), in which Defendants seek dismissal of two claims; (2) Plaintiff's Motion to

Amend (Dkt. 26); (3) Plaintiff's Request for Disclosure (Dkt. 30); and (4) Plaintiff's

Motion for Injunctive Relief (Dkt. 34). Also pending are several motions for extensions

of time filed by Plaintiff. (Dkt. 20, 23, 25, 33.)

**MEMORANDUM DECISION AND ORDER - 1**

All parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (Dkt. 14.)

Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record and that oral argument is unnecessary. *See* D. Idaho Loc. Civ. R. 7.1. Accordingly, the Court enters the following Order.

## BACKGROUND

The Complaint and proposed amended complaint allege the following facts, which are taken in the light most favorable to Plaintiff. Although Plaintiff is currently incarcerated at the Idaho State Correctional Institution ("ISCI"), his claims arose when he was housed in the Idaho State Correctional Center ("ISCC"). On December 3, 2014, Plaintiff was attacked at ISCC by members of his former gang. (Compl., Dkt. 3, at 2.) He fought back. Although Plaintiff states that acted in self-defense, he was issued a Disciplinary Offense Report ("DOR") for fighting.[1] (Dkt. 19-2 at 9.) Plaintiff was then transferred to ISCI. However, on August 28, 2015, Plaintiff was transferred back to ISCC, where he was again attacked. (Dkt. 3 at 2.)

Plaintiff filed his initial Complaint in January 2016. On April 7, 2016, the Court reviewed the Complaint pursuant to 28 U.S.C. §§ 1915 and 1915A and allowed Plaintiff

---

[1]      The DOR was later dismissed. (Ex. D to Dkt. 29.)

**MEMORANDUM DECISION AND ORDER - 2**

to proceed on Eighth Amendment failure-to-protect claims based on the two incidents. (Dkt. 8 at 6-7.)

According to Plaintiff's proposed amended complaint, on April 27, 2016, Plaintiff was transferred to the Idaho Maximum Security Institution ("IMSI"). (Dkt. 26-1 at 5.) Even though IMSI is a different prison from where Plaintiff was previously attacked, Plaintiff states that the same individuals, or at least members of the same gang, attacked him a third time at IMSI. (*Id.*)

Defendants now move for summary judgment, arguing that Plaintiff did not exhaust available administrative remedies as to the December 2014 and August 2015 incidents.[2] (Dkt. 16.) After filing a motion to stay and multiple motions for extensions of time to file his response, Plaintiff filed his Motion to Amend. (Dkt. 26.) Plaintiff later submitted an untimely opposition to Defendants' Motion for Summary Judgment. (Dkt. 29, filed November 17, 2016; *see also* Dkt. 25, requesting an extension until October 21, 2016.)

## PLAINTIFF'S MOTIONS FOR EXTENSIONS OF TIME

Plaintiff's first three requests for extensions of time will be granted. (Dkt. 20, 23, 25.) Even with those extensions, Plaintiff's response to the Motion for Summary Judgment was still filed nearly a month late. (Dkt. 29.) However, the Court will exercise its discretion to consider Plaintiff's untimely response.

---

[2]     Because Defendants' Motion for Summary Judgment was filed before Plaintiff filed his Motion to Amend, that Motion does not address the April 2016 incident.

**MEMORANDUM DECISION AND ORDER - 3**

Plaintiff's latest request seeks an extension of time to file a sur-reply in opposition to the Motion for Summary Judgment. (Dkt. 33.) However, because sur-replies are not authorized by the Local Rules, Plaintiff's motion for an extension for that purpose will be denied as moot. *See* Dist. Id. Loc. Civ. R. 7.1.

## PLAINTIFF'S MOTION TO AMEND

Defendants partially oppose Plaintiff's Motion to Amend, asserting that the amendment is futile and creates undue delay with respect to Plaintiff's claims arising from the first two incidents.

Amendments to pleadings are governed by Rule 15 of the Federal Rules of Civil Procedure. The Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit has explained the reasoning behind allowing the opportunity to amend:

> In exercising its discretion with regard to the amendment of pleadings, a court must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities. This court has noted on several occasions that the Supreme Court has instructed the lower federal courts to heed carefully the command of Rule 15(a) . . . by freely granting leave to amend when justice so requires. Thus Rule 15's policy of favoring amendments to pleadings should be applied with extreme liberality.

*Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987) (internal citations, quotation marks, and alterations omitted). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.," it is

**MEMORANDUM DECISION AND ORDER - 4**

appropriate for a court to grant leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Although all of these factors contribute to the analysis of whether a plaintiff should be allowed an opportunity to amend, futility alone justifies denying such an opportunity. *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004).

In addition, the Court retains its screening responsibility pursuant to 28 U.S.C. § 1915A(a), which requires that the Court review all complaints filed by prisoners against a governmental entity or an officer or employee of a governmental entity. The Court must dismiss any such complaint, "or any portion of the complaint," that fails to state a claim upon which relief may be granted. *Id.* § 1915A(b).

Amendment with respect to Plaintiff's claims arising from the first two attacks, in December 2014 and August 2015, is futile because, as explained below, Plaintiff did not exhaust available administrative remedies as to those claims. Therefore, Plaintiff's Motion to Amend will be denied in part. The Motion will be granted with respect to Plaintiff's claim based on the April 2016 incident, as Defendants do not oppose amendment for that purpose. (Dkt. 28 at 2.)

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### 1.    Standard of Law Governing Summary Judgment

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is not "a disfavored

**MEMORANDUM DECISION AND ORDER - 5**

procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). Rather, there must be no *genuine* dispute as to any *material* fact in order for a case to survive summary judgment. Material facts are those "that might affect the outcome of the suit." *Id.* at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party is entitled to summary judgment if that party shows that each material fact cannot be disputed. To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the adverse party is unable to produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1)(A) & (B). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (internal quotation marks omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *So. Ca. Gas Co.*, 336 F.3d at 889.

If the moving party meets its initial responsibility, then the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does

**MEMORANDUM DECISION AND ORDER - 6**

exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which [a] jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

Material used to support or dispute a fact should be "presented in a form that would be admissible in evidence," or it may be subject to being stricken. Fed. R. Civ. P. 56(c)(2).[3] Affidavits or declarations submitted in support of or in opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2). The Court may grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the parties. Although all reasonable inferences which can be drawn from the evidence must be drawn in a light most favorable to the non-moving party, *T.W. Elec.*

---

[3]    In determining admissibility for summary judgment purposes, it is the content of the evidence, rather than its form, that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003). If the content of the evidence could be presented in an admissible form at trial, the content may be considered on summary judgment even if the evidence itself is hearsay. *Id.* (affirming consideration of hearsay contents of plaintiff's diary on summary judgment because at trial, plaintiff's testimony would not be hearsay).

**MEMORANDUM DECISION AND ORDER - 7**

*Serv., Inc.*, 809 F.2d at 630-31, the Court is not required to adopt unreasonable inferences from circumstantial evidence, *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

2.      **Standard of Law Governing Exhaustion of Administrative Remedies**

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"),[4] prisoners are required to exhaust all available administrative remedies within the prison system before they can include the claims in a new or ongoing civil rights lawsuit challenging the conditions of their confinement. 42 U.S.C. § 1997e(a); *see also Cano v. Taylor*, 739 F.3d 1214, 1220-21 (9th Cir. 2014) (holding that a claim may be exhausted prior to filing suit or during suit, so long as exhaustion was completed before the first time the prisoner sought to include the claim in the suit). "Proper" exhaustion of administrative remedies is required, meaning that the prisoner must comply "with [the prison's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). However, an inmate need only exhaust those remedies that are "available"—that is, an inmate must exhaust "those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211

---

[4]      Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

**MEMORANDUM DECISION AND ORDER - 8**

(2007). Proper exhaustion is required "even where it may appear futile." *Nunez v. Duncan*, 591 F.3d 1217, 1231 (9th Cir. 2010) (quoting *Booth*, 532 U.S. at 741). The exhaustion requirement is based on the important policy concern that prison officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id.* at 204.

As the PLRA intended, all motions addressing exhaustion of administrative remedies, including "disputed factual questions relevant to exhaustion[,] should be decided at the very beginning of the litigation." *Id.* at 1171. Rule 56 prohibits the courts from resolving genuine disputes of material fact on summary judgment. However, if a genuine dispute exists as to material facts relating to an exhaustion defense such that summary judgment is inappropriate, the Court is authorized—but not required—to decide the disputed facts in an appropriate preliminary proceeding, "in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue." *Id.* at 1170-71. *See also McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 184 (1936) (stating that the court may "inquire into the facts as they really exist") (internal quotation marks omitted); *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1139 (9th Cir. 2004) (stating that the court may "hold[] an evidentiary hearing on the disputed facts"); *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987) (stating that the court "has the discretion to take evidence at a preliminary hearing in order to resolve any questions of credibility or fact" and that the plaintiff must establish the facts "by a preponderance of the evidence, just as he would have to do at trial") (internal quotation marks omitted). In

**MEMORANDUM DECISION AND ORDER - 9**

all cases, "[e]xhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim." *Albino*, 747 F.3d at 1170.

The defendant bears the ultimate burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

There are three situations that can render a prison or jail grievance process effectively unavailable to an inmate. First, an administrative procedure is not available, and therefore need not be exhausted, "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 136 S. Ct. at 1859.

Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* "When rules are so confusing that no reasonable prisoner can use them, then they're no longer available." *Id.* (internal quotation marks and alteration omitted).

**MEMORANDUM DECISION AND ORDER - 10**

Finally, administrative remedies will be deemed unavailable if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation," or if administrators otherwise interfere with an inmate's pursuit of relief. *Id*. at 1860. For example, if the prison improperly processed an inmate's grievance, if prison officials misinformed an inmate regarding grievance procedures, or if the inmate "did not have access to the necessary grievance forms within the prison's time limits for filing the grievance," the remedies will be considered unavailable. *Albino*, 747 F.3d at 1172-73; *see also McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015) (holding that an inmate's fear of retaliation may suffice to render the grievance process unavailable, if the prisoner (1) "provide[s] a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance," and (2) "demonstrate[s] that his belief was objectively reasonable").

If a prisoner has failed to exhaust available administrative remedies, the appropriate remedy is dismissal without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003), *overruled in part on other grounds by Albino*, 747 F. 3d 1162.

## 3.   The IDOC Grievance Process

IDOC has established a grievance process, described in the document attached as Exhibit A to the Affidavit of Ammie Mabe, the grievance coordinator at ISCC. (Dkt. 16-7 ("Mabe Aff.").) The grievance policy is also attached as Exhibit A to the Affidavit of Jill Whittington, the grievance coordinator at ISCI. (Dkt. 16-9 ("Whittington Aff.").) The IDOC's grievance process consists of three stages.

**MEMORANDUM DECISION AND ORDER - 11**

First, any inmate with a concern must seek an informal resolution by filling out an offender concern form "addressed to the staff member most capable of responding to and, if appropriate, resolving the issue." (Mabe Aff. ¶ 5; Whittington Aff. ¶ 5.)

If the issue cannot be resolved informally through the use of a concern form, the inmate must then file a grievance. (Mabe Aff. ¶ 6; Whittington Aff. ¶ 6.) A grievance form must be submitted within 30 days of the incident giving rise to the grievance. The grievance must "contain specific information including the nature of the complaint, dates, places, and names." (Mabe Aff. ¶ 7; Whittington Aff. ¶ 7.)

When the grievance coordinator receives a grievance, the grievance information is entered into the Corrections Integrated System ("CIS"), "an electronic database used to log offender grievances and grievance appeals." (Mabe Aff. ¶ 7; Whittington Aff. ¶ 7.) If a grievance form is filled out incorrectly—that is, if it does not comply with the grievance policy—the grievance is returned to the inmate without being processed, along with a description of the deficiencies in the crafting of the grievance. The inmate may then correct the grievance for processing.

If a grievance is completed correctly, the grievance coordinator assigns the inmate grievance to the staff member most capable of responding. That staff member answers the grievance and returns it to the coordinator. The coordinator then forwards the grievance to a "reviewing authority," usually a deputy warden. (*Id.*) The reviewing authority reviews the staff member's response to the grievance and issues a decision on the inmate's grievance. The grievance decision is then returned to the inmate.

**MEMORANDUM DECISION AND ORDER - 12**

If the decision on a grievance is not satisfactory to the inmate, the inmate may appeal that decision to the "appellate authority," usually the warden of the facility. (Mabe Aff. ¶ 9; Whittington Aff. ¶ 9.) The appellate authority decides the grievance appeal, and the appeal form is returned to the inmate.

Not until the completion of all three of these steps—concern form, grievance form, and grievance appeal—is the grievance process exhausted. (Mabe Aff. ¶ 10; Whittington Aff. ¶ 10.)

### 4. Plaintiff Did Not Properly Exhaust Available Administrative Remedies as to His Claims Arising from the December 2014 and August 2015 Attacks

Defendants have submitted evidence that, since the date of the December 2014 attack, Plaintiff filed nine grievances with prison staff—three at ISCC, and six at ISCI.[5] (Mabe Aff. ¶ 14; Whittington Aff. ¶ 14.) However, only four of the grievances related to Plaintiff's being placed in danger of attack by other inmates.[6]

---

[5]    One of these grievances was filed twice—once at ISCC and once at ISCI. (Ex. B to Mabe Aff., Dkt. 16-7 at 31; Ex. B to Whittington Aff., Dkt. 16-9 at 32.) Thus, although Plaintiff submitted nine grievances, only eight were unique. "Because [Plaintiff] was housed at ISCI at the time this [duplicate] grievance was filed," it was dealt with by ISCI staff. (Mabe Aff. ¶ 14(b).)

[6]    The grievances unrelated to the attacks are as follows:
- On December 3, 2014 (coincidentally, the day of the first attack), Plaintiff submitted a grievance alleging that some of his property, including his television, was damaged, destroyed, or lost during transport. (Mabe Aff. ¶ 14(a); Ex. B to Mabe Aff., Dkt. 16-7 at 31.)
- On April 7, 2015, Plaintiff submitted a grievance about a broken lamp. (Ex. B. to Whittington Aff., Dkt. 16-9 at 32.)
- On April 30, 2015, Plaintiff again grieved the issue of the broken lamp. (*Id*.)
- On December 1, 2015, Plaintiff filed a grievance requesting reimbursement for a Health Services Request. (*Id*.)
- On January 19, 2016, Plaintiff filed a grievance complaining that his other grievances were not being processed. (Ex. B. to Mabe Aff., Dkt. 16-7 at 31.)

**MEMORANDUM DECISION AND ORDER - 13**

On December 21, 2015, Plaintiff filed his first grievance related to the issues in this lawsuit, complaining that "he was moved from ISCC to ISCI and then back to ISCC and got into a fight." (Ex. B to Whittington Aff., Dkt. 16-9 at 32; *see also* Whittington Aff. ¶ 14(d).) This grievance was returned to Plaintiff without action, as noncompliant with the grievance policy, because it did not contain any "specific information." (*Id.*; Whittington Aff. at ¶ 16.)

On December 30, 2015, Plaintiff filed duplicate grievances (his second and third grievances with respect to his current claims). (Ex. B to Mabe Aff., Dkt. 16-7 at 31; Ex. B to Whittington Aff., Dkt. 16-9 at 32.) These grievances complained that Plaintiff was assaulted at ISCC on December 3, 2014 and that he was then moved to ISCI, but that he was transferred back to ISCC on August 28, 2015. These grievances were returned to Plaintiff without action because they were filed beyond the 30-day time limit for filing grievances. (Whittington Aff. ¶ 14(e) and Ex. B, Dkt. 16-9 at 32.)

On March 16, 2016, Plaintiff filed his fourth grievance with respect to his failure-to-protect claims. In this grievance, Plaintiff asserted that "ISCC staff put him in danger." (Mabe Aff. ¶ 14(c) and Ex. B, Dkt. 16-7 at 31.) This grievance was returned to Plaintiff without action because he "did not give specific names, dates, places or times" as required by the grievance policy. (Ex. B to Mabe Aff., Dkt. 16-7 at 31.)

Because none of the grievances that was related to the December 2014 or August 2015 incidents complied with IDOC's grievance process, Defendants have met their initial burden of establishing that Plaintiff did not properly exhaust administrative

**MEMORANDUM DECISION AND ORDER - 14**

remedies. *See Jones*, 549 U.S. at 218 (stating that the prison's grievance requirements "define the boundaries of proper exhaustion").

The burden thus shifts to Plaintiff to show that the administrative remedy was effectively unavailable. *Albino*, 747 F.3d at 1172. Plaintiff has not done so. Plaintiff first asserts that he spoke with various prison staff members and expressed his fear for his safety. (Dkt. 29-1 at 1-2.) Plaintiff states he "believed that if he had talked to state actors about a criminal attack he would not need to exhaust." (*Id*. at 3.) However, informal conversations do not satisfy the IDOC's exhaustion requirement. Rather, the policy plainly requires that an inmate complete all three of the required steps, through the level of a grievance appeal. Plaintiff does not allege that he was prohibited from accessing a copy of the grievance procedure, which outlines this required process, and the policy is not "so confusing" that a reasonable inmate would be unable to use it. *Ross*, 136 S. Ct. at 1859.

Next, Plaintiff alleges that he properly exhausted his newest claim—that he was assaulted in April 2016—and that exhaustion of that claim also served to exhaust his claims arising from the first two attacks because he is asserting "ongoing continual claims." (Dkt. 29-1 at 3; Dkt. 29-2 at 29-2.) The Court has found no legal authority for the proposition that the proper exhaustion of a new claim can excuse the improper exhaustion of an old claim. Thus, to the extent Plaintiff properly grieved the issue of the April 2016 attack, that grievance cannot serve to exhaust his claims arising from the December 2014 and August 2015 attacks.

**MEMORANDUM DECISION AND ORDER - 15**

Finally, Plaintiff contends (1) that he could not utilize the grievance process regarding the December 2014 incident because he received a DOR with respect to that incident, and (2) that his appeal of the DOR, in which he asserted that he acted in self-defense, constitutes proper exhaustion. (Dkt. 29-2 at 9-13.)

The IDOC grievance policy requires that any challenge to a DOR must be raised in the disciplinary process, rather than in a grievance. (Ex. A to Mabe Aff.; Ex. A to Whittington Aff. ("Offenders cannot submit a *Grievance* for issues specific to the offender disciplinary system . . . .")); *see also* Ex. E. to Dkt. 29 ("Offenders cannot use the procedures outlined in [the grievance policy] for issues or concerns specific to [the disciplinary process].") According to Plaintiff, he followed this requirement by exhausting his claims through the DOR appeal process.

Another Idaho federal judge recently rejected a similar argument in *Campbell v. Yordy*, No. 1:15-cv-00529-EJL, 2016 WL 7256812 (D. Idaho Dec. 15, 2016). In that case, the plaintiff contended that the use of the DOR appeal process was sufficient to exhaust available administrative remedies as to a failure-to-protect claim because he raised self-defense as an issue in the appeal. The court was not persuaded because the grievance policy set forth a clear distinction between issues that were to be raised in the DOR appeal process and those that were to be raised in the grievance process. Therefore, the plaintiff had not established that the grievance policy was "so opaque" that it was, "practically speaking, incapable of use." *Id.* at *7 (quoting *Ross*, 136 S. Ct. at 1859).

Contrary to Plaintiff's contention, issues that do not challenge the disciplinary action itself, such as failure-to-protect claims, must be grieved pursuant to the grievance

**MEMORANDUM DECISION AND ORDER - 16**

policy and cannot be exhausted through the DOR appeal process. The example given in the IDOC grievance policy provides as follows:

> **Example #2**—An offender claims his placement resulted in a fight for which he received a DOR. An appeal to the DOR itself, the offender must use the DOR appeal process. *The offender could file a grievance regarding placement.*

(*Id.*) (verbatim). "As the example makes clear, if an inmate wants to challenge something related to, *but not the subject of*, the DOR, his remedy lies in the grievance process. On the other hand, if the inmate wants to challenge the DOR *itself*, his remedy lies in the DOR appeal process." *Campbell*, 2016 WL 7256812, at *7.

The policy informs inmates that to exhaust any claim of inappropriate conditions of confinement, including failure-to-protect claims based on the inmate's housing placement—as opposed to objections to a disciplinary action—the inmate must follow grievance procedures, not DOR procedures. The example specifically refers to a situation where housing placement allegedly results in a fight that leads to a DOR—Plaintiff's precise situation. Therefore, a reasonable inmate would understand that he could not exhaust his failure-to-protect claim regarding the December 2014 attack by arguing self-defense in a DOR appeal. Hence, Plaintiff's claims arising from the December 2014 and August 2015 incidents must be dismissed without prejudice.

## PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF

Plaintiff seeks an injunction requiring that various legal resources be available in the prison resource center, arguing that he is being denied his right to access the courts. (Dkt. 34.)

**MEMORANDUM DECISION AND ORDER - 17**

1.      **Standard of Law**

Rule 65 of the Federal Rules of Civil Procedure governs preliminary injunctions.

Such an injunction may be granted only if the moving party demonstrates the following

elements: (1) that the moving party will suffer irreparable injury if the relief is denied; (2)

that the moving party will probably prevail on the merits; (3) that the balance of potential

harm favors the moving party; and (4) that the public interest favors granting relief.

*Winter v. Natural Res. Defense Council, Inc*., 555 U.S. 7, 20 (2008); *Cassim v. Bowen*,

824 F.2d 791, 795 (9th Cir. 1987). "Because a preliminary injunction is an extraordinary

remedy, the movant's right to relief must be clear and unequivocal." *Dominion Video*

*Satellite v. Echostar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001). A threshold

issue is whether there is a sufficient "relationship between the injury claimed in the

motion for injunctive relief and the conduct asserted in the underlying complaint."

*Pacific Radiation Oncology, LLC v. Queen's Medical Center*, 810 F.3d 631, 636 (9th Cir.

2015). In particular, the movant must show that the preliminary injunction would grant

"relief of the same character as that which may be granted finally." *Id.* (internal quotation

marks omitted). If the movant cannot show that a relationship or nexus exists, "the

district court lacks authority to grant the relief requested." *Id*.

In deciding whether to issue a preliminary injunction, the Court "is not bound to

decide doubtful and difficult questions of law or disputed questions of fact." *Internat'l.*

*Molders' and Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th

Cir. 1986) (quoting *Dymo Industries, Inc. v. Tapewriter, Inc.*, 326 F.2d 141, 143 (9th Cir.

1964)). A court "is not obliged to hold a hearing [on a motion for a preliminary

**MEMORANDUM DECISION AND ORDER - 18**

injunction] when the movant has not presented a colorable factual basis to support the claim on the merits or the contention of irreparable harm." *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1176 (3rd Cir. 1990).

2.     **Discussion**

Prisoners have a constitutional right to access the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). To state a viable access to courts claim, a plaintiff must plausibly allege that he suffered an actual injury as a result of the defendant's actions. *Lewis v. Casey*, 518 U.S. 343, 349 (1996). Because the right of access to the courts is not an "abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Id.* at 351.

Actual injury may be manifest, however, if the alleged denial of access "hindered [the plaintiff's] efforts to pursue a legal claim," such as having his complaint dismissed "for failure to satisfy some technical requirement," or if he "suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by [the defendants' actions] that he was unable even to file a complaint." *Id.* at 351. The right of access to the courts is limited and applies only to direct appeals from convictions for which the inmates are incarcerated, habeas petitions, and civil rights actions regarding prison conditions. *Id.* at 354. "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* at 355 (emphasis omitted). "In other words, *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything

from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Id.*

Plaintiff has not established a likelihood that he has suffered, or will suffer, an actual injury to his right of access to the courts. Plaintiff's clear and understandable briefing on the instant Motion for Summary Judgment establishes that he has been able to protect his interests and to submit adequate arguments for the Court's consideration. Therefore, Plaintiff's Motion for Injunctive Relief will be denied.

## ORDER

**IT IS ORDERED:**

1.    Plaintiff's first Motion for Extension of Time (Dkt. 20) is GRANTED.

2.    Plaintiff's second Motion for Extension of Time (Dkt. 23) is GRANTED.

3.    Plaintiff's third Motion for Extension of Time (Dkt. 25) is GRANTED.

4.    Plaintiff's fourth Motion for Extension of Time (Dkt. 33) is MOOT.

5.    Plaintiff's Motion to Amend (Dkt. 26) is GRANTED IN PART. Plaintiff may proceed on his claim related to the April 2016 incident, but he may not proceed on any other claims at this time. *See* 28 U.S.C. § 1915A. The Clerk of Court shall docket the Amended Complaint (currently Dkt. 26-1 through 26-3) as a separate docket entry, noting the date it was originally submitted.

6.    Defendants' Motion for Summary Judgment (Dkt. 16) is GRANTED. Plaintiff's claims regarding the December 2014 and August 2015 incidents are DISMISSED without prejudice.

**MEMORANDUM DECISION AND ORDER - 20**

7.    Plaintiff's Motion for Injunctive Relief (Dkt. 34) is DENIED.

8.    Plaintiff's Motion to Produce (Dkt. 38) is DENIED.

9.    Plaintiff's Motion to Stay Proceedings (Dkt. 39) pending a decision on his
Motion for Injunctive Relief is MOOT.

10.   Because the stay on disclosures and discovery, *see* Dkt. 8 and 19, is lifted
as of this Order, Plaintiff's Request for Disclosure (Dkt. 30) is MOOT. The
Court reiterates that all requests for discovery must be exchanged between
parties only, and are not to be submitted to the Court (other than attached to
affidavits or declarations as exhibits to a proper motion).

11.   Defendants shall answer the allegations in the Amended Complaint that
pertain to the remaining claim within 14 days. The Court will then issue a
scheduling order to govern the remainder of this litigation.


DATED:  **March 16, 2017**

_____
Honorable Ronald E. Bush
United States Magistrate Judge


**MEMORANDUM DECISION AND ORDER - 21**